Milligan, J.,
delivered the opinion of the court:
The claimant seeks the judgment of this court for the proceeds of two hundred and twenty-nine bales of cotton captured at- Savannah, Georgia, by the military forces of the United States under Major-General Sherman, late in 1864, or early in 1805. He proves title to one hundred and fifty bales upland cotton and eighty-nine sea-island. Two hundred and thirty-seven bales, as near as can be ascertained from the record, were captured in the early part of the year 1805, and shipped to New York, and there sold and the net proceeds paid into the national Treasury.
There is a discrepancy between the number óf bales owned by the claimant and the number captured, which by no means is reconciled by the return from the War Department. He is there credited with only two hundred and twenty-nine bales, which is ten bales less than he owned, and eight less than appear to have been captured. To add to this discrepancy, the two hundred and twenty-nine bales shown on the registration book appear to be made 'up of one hundred and twenty-two bales upland, and one hundred and seven sea-island.
The record furnishes no satisfactory solution of these differences, and we cannot do otherwise than hold him to the less amount claimed in his petition, and treat the case as fully made out for one hundred and fifty bales upland, and eighty-nine sea-island.
Rejecting the oath of amnesty alleged to have been taken on the 31st of December, 1864, as not proven, it fully appears that the claimant, subsequently, on the 15th of July, 1865, took and subscribed the oath of amnesty prescribed by President Johnson in his proclamation of the 29th of May, 1865. He is not within any of the exceptions of the proclamation, and has faithfully kept his oath of pardon and amnesty inviolate.
The Assistant-Attorney General objected to the admissibil *553 ity of tbis oath on two grounds: First, because it is inadmissible under tbe proviso of tbe act of 1870, for tbe purpose of sustaining tbe action; and, Second, because tbe claimant is not sufficiently identified as tbe person who took tbe oath offered in evidence. *
In answer to tbe first objéction it need only be observed that tbe President’s proclamation promised amnesty and pardon to all except certain persons therein mentioned, with restoration of tbe rights of property, except slaves, and that as to which legal proceedings bad been instituted under laws of tbe United States. All who embraced this offer were required to take and subscribe an oath of tbe same tenor and effect required in tbe first proclamation. Tbe oath offered in tbis record fulfills all tbe requirements of tbe proclamation, and brings tbe claimant directly under tbe promises made him by tbe Government. He has observed and kept bis oath inviolate, and under tbe decision of tbe Supreme Court in Klein's Case, be is entitled to tbe full benefit of amnesty and pardon.
Tbe effect of amnesty and pardon has been repeatedly defined by tbe Supreme Court of tbe United States. In Garland’s Case (4 Wallace, 380) the court say, “ that in tbe eye of tbe law tbe offender is as innocent as if be bad never committed tbe offense,-” and in the case of- Armstrong Foundery, (6 Wallace, 769,) they bold that tbe general pardon granted to Armstrong-relieved him from all i>enalty winch be bad incurred to tbe United States, and in Fadelford’s Case, (9 Wallace, 531,) in which tbe oatli of amnesty was taken before seizure of tbe property claimed, tbe court say, “ that at tbe time of tbe seizure of tbe petitioner’s property be was purged of whatever offense against tbe laws of tbe United States be bad committed by tbe acts mentioned in tbe findings, and relieved from any penalty which be might have incurred.” In tbis connection tbe court also add, “if tbe property had been seized before tbe oath was taken, tbe faith of tbe Government was pledged to its restoration, upon the taking of tbe oath in good faith.” In Padelford’s Case it was further suggested that tbe petitioner is without remedy in tbis court unless proof is made, under the Carptured and abandoned property acts, that be gave no aid or comfort to tbe rebellion. To this tbe court reply: u Tbe suggestion is'ingenious, but we do not think it sound. The sufficient answer to it is, that, after tbe pardon, no offense can be *554 imputed to him. If in other respects the petitioner made the proof which, under the act, entitled Mm to a decree for the proceeds of his property, the law makes the proof of pardon a complete substitute for proof that he gave no aid or comfort to the rebellion.” *
After these rulings of the Supreme Court were made, the act of 1870 was passed, which contains the proviso relied on by the Assistant Attorney-General to exclude the oath of amnesty as -evidence to sustain the claimant’s right of action. The substance of this enactment is, as declared by the Supreme'Court in Klein’s Case, “that an acceptance of pardon without disclaimer shall be conclusive evidence of the acts pardoned, but shall be null and void as evidence of the rights conferred by it, both in the Court of Claims and in the Supreme Court on appeal.” The great and controlling purpose of this provision of the statute is to deny to pardons granted by the President the effect which the Supreme Court has adjudged them to have. This exceeds the legitimate powers of Congress, and cannot be done, as that court held in Klein’s Case, under the Constitution of the United States. We have enforced that opinion in WitIcowslci’s Case at the present term, and it must rule the motion of the Attorney-General in this case.
On the second objection it is only necessary to say that the name, place of residence, and occupation of the claimant are all identical with the name, residence, and business of the person mentioned and described in the oath of amnesty in this case; and, in the absence of all proof to the contrary, we have no hesitation in holding.that the claimant is the identical person who took and subscribed the oath, and that he is entitled to all the benefits conferred by it.
On the whole case we hold the claimant entitled to recover the net proceeds of two hundred and twenty-nine bales of cotton, which we find to be $40,150.57, but the entry of judgment •will be suspended under the rule just laid down in Queyrouze’s ■Case.